# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1463V
Filed: July 25, 2022
UNPUBLISHED

| | |
|---|---|
| LISA NEUSS-GUILLEN,<br><br>                        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                        Respondent. | Special Master Horner<br><br>Interim Attorneys' Fees and Costs; Withdrawing Attorney; Reasonable Basis |

*Andrew Donald Downing*, Downing, Allison, Jorgenson, Phoenix, AZ, for petitioner.
*Ronalda Elnetta Kosh*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On April 12, 2022, petitioner moved for an award of interim attorneys' fees and costs in connection with a contemporaneously filed motion by petitioner's counsel to withdraw as counsel. (ECF Nos. 47-48.) On May 10, 2022, respondent filed an opposition to petitioner's request for fees and costs, alleging that petitioner failed to establish a reasonable basis for her claim. (ECF No. 50.) On May 23, 2022, petitioner filed a supplement to her motion for additional attorneys' fees incurred responding to respondent's opposition. (ECF No. 52.) In total, petitioner requests $74,806.00 to be paid for attorney and paralegal fees with an additional $600.96 to be paid for other costs for a total of $75,406.96. For the reasons discussed below, I award petitioner attorneys' fees and costs in the requested amount of $75,406.96.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

1

**I.      Procedural History**

On September 24, 2018, petitioner, Lisa Neuss-Guillen, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §300aa-10-34 (2012), alleging that she suffered reactive polyarthritis following the receipt of a tetanus diphtheria acellular pertussis ("Tdap") vaccination in her left deltoid on October 22, 2015.  (ECF No. 1, p. 2; *see also* Ex. 2, p. 2.)

After reassignment to my docket, I held a status conference on September 4, 2019, to discuss the next steps in the case.  (ECF No. 22.)  During the status conference, respondent explained that there appeared to be very little in the record, specifically in Exhibit 4, supporting petitioner's claim of a vaccine injury.  (*Id.*)  Petitioner responded that she intended to file an amended petition with citations to the records supporting her allegations.  (*Id.*)  She also expressed her willingness to file a statement from her treating rheumatologist, Dr. Ehresmann, in order to resolve the parties' concerns regarding the records from Keck Medicine.  (*Id.* at 1.)  Petitioner filed an amended petition on October 4, 2019.  (ECF No. 23.)

On April 10, 2020, another status conference was held wherein petitioner's counsel indicated that he did not succeed in obtaining information from Dr. Ehresmann in order to move forward.  (ECF No. 32, p. 1.)  Respondent's counsel indicated that there were "outstanding factual issues relating to petitioner's diagnosis."  (*Id.*)  Specifically, "[r]espondent ha[d] only located a letter from Dr. Ehresmann referencing petitioner's diagnosis, but nothing further. Respondent [wa]s concerned by the lack of clinic[al] encounters that support Dr. Ehresmenn's opinion."  (*Id.*)  "Mr. Downing agreed that it appear[ed] that there [were] not any contemporaneous treatment records filed at this point from Dr. Ehresmann that further support petitioner's diagnosis, which is why it [wa]s important that petitioner obtain information from Dr. Ehresmann directly."  (*Id.*)  Petitioner was ordered "to coordinate with Keck Medicine and/or secure the deposition of Dr. Ehresmann."  (*Id.* at 2.)  Petitioner filed a letter from Dr. Ehresmann on July 17, 2020.  (ECF No. 34.)

On July 30, 2020, I held a status conference to follow up with the parties in regard to Dr. Ehresmann's letter (Exhibit 8).  (ECF No. 35.)  Respondent noted that several statements made by Dr. Ehresmann were not corroborated by any of petitioner's medical records.  (*Id.*)  Petitioner's counsel reported that Dr. Ehresmann's letter was based on observations he made during petitioner's IVIG infusions.  (*Id.*)  He indicated that there were no encounter records recording his observations, though there was reference to some objective test results.  (*Id.*)  Respondent requested that petitioner provide citations to any records that support the contentions made in Dr. Ehresmann's letter.  (*Id.*)  Due to the difficulty in assessing the weight to be given to Dr. Ehresmann's letter, the primary evidence supporting petitioner's alleged diagnosis, I recommended that the case proceed to a finding of fact in order to clarify the questions of diagnosis and onset.  The parties agreed.  (*Id.*)

On September 30, 2020, petitioner moved for a finding of fact that she was diagnosed with reactive polyarthritis following her vaccination, and that onset of her condition occurred "a few weeks" after vaccination.  (ECF No. 37.)  On September 29, 2021, I issued a finding of fact, finding that although petitioner contemporaneously reported a subjective complaint of increased joint pain in her upper extremities sometime between mid-November 2015 and February 3, 2016, the remainder of her alleged symptoms were not preponderantly established as occurring within this period.  (ECF No. 42.)  There was not preponderant evidence that any other alleged symptom of reactive polyarthritis began within that period.  (*Id.*)  Accordingly, additional expert evidence was necessary before issuing a finding of fact supporting the diagnosis of reactive polyarthritis.  (*Id.*)

Following the finding of fact, petitioner filed the instant motion on April 12, 2022.  (ECF No. 47.)  Concurrently, petitioner's counsel filed a motion to withdraw as attorney of record.  (ECF No. 48.)  Respondent filed an opposition to petitioner's request for fees and costs, alleging that petitioner failed to establish a reasonable basis for her claim on May 10, 2022.  (ECF No. 50.)  On May 17, 2022, petitioner filed her reply.  (ECF No. 51.)  In light of respondent's response, petitioner filed a supplement to her motion for additional attorneys' fees on May 23, 2022.  (ECF No. 52.)  On June 6, 2022, respondent filed a response to petitioner's supplemental motion, again recommending against an award of interim fees and costs.  (ECF No. 53.)  Petitioner's motion is now ripe for a decision on interim attorneys' fees and costs.

## II.     Awards of Interim Attorneys' Fees and Costs

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  42 U.S.C. § 300aa–15(e)(1)(A)–(B).  Petitioners are eligible for an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

### a.  Good Faith and Reasonable Basis

"Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).  Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into its consideration.  *See James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021).  In this case, petitioner's good faith is not challenged, leaving only the question of whether there was a reasonable basis for the filing of the petition.

The evidentiary standard for establishing a reasonable basis as prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act.  To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-*7 (Fed. Cl.

2012).  Instead, the special master considers the totality of the circumstances and evaluates objective evidence that, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence.[2]  *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344, 1346 (Fed. Cir. 2020); *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (Fed. Cl. 2018).  Even though petitioner can meet the reasonable basis standard by pointing to circumstantial evidence in the medical records, a temporal relationship between the vaccine and the alleged symptoms by itself is not sufficient to establish a reasonable basis.  *Compare Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 110, 114-15 (Fed. Cl. 2018) (finding no reasonable basis for an award for attorneys' fees and costs where petitioner only showed a temporal proximity between her third injection of the HPV vaccine and the onset of her symptoms, i.e., hives and skin irritation, without submitting an expert report providing evidence that the HPV vaccine was the cause of her injuries), *with A.S. by Svagdis v. Sec'y of Health & Human Servs.*, No. 15-520V, 2020 WL 3969874, at *2 (Fed. Cl. Spec. Mstr. June 4, 2020) (finding a reasonable basis for an award for attorneys' fees and costs where petitioners showed more than a temporal proximity between their daughter's vaccines and her symptoms by submitting four expert reports of physicians offering medical opinions and medical literature in support of potential causation).

In this case, although petitioner ultimately provided a letter opinion by her treating physician (Dr. Ehresmann), respondent stresses that petitioner's claim is unsubstantiated by the medical records or reliable medical opinion, and thus lacks a reasonable basis.  (ECF No. 50, p. 15.)  Respondent insists that there is no objective evidence that petitioner was diagnosed with reactive polyarthritis or that she suffered from the same.  (*Id.*)  Respondent stresses that Dr. Ehresmann failed to list reactive polyarthritis as a diagnosis in petitioner's medical records and there is no examination or clinical notes to support such a diagnosis.  (*Id.*)  Respondent further stresses that Dr. Ehresmann did not report a diagnosis of reactive polyarthritis to any other physicians in his referrals, and he continued to treat petitioner for Bechet's and osteoarthritis after her vaccination.  (*Id.*)

Respondent analogizes petitioner's case to *Perreira vs. Secretary of Health and Human Services.*  33 F.3d at 1375 (Fed. Cir. 1994).  In *Perreira,* the Federal Circuit held that the special master properly denied attorneys' fees and costs for a petition lacking

---

[2] Examples of "more than a mere scintilla" of objective evidence supporting causation include medical records that provide "only circumstantial evidence of causation."  *James-Cornelius*, 984 F.3d at 1379-80 (finding that record evidence lacking an express medical opinion on causation still showed circumstantial evidence of causation where 1) petitioner's medicals records contained a doctor's note questioning whether a vaccine adverse event should be reported, 2) the medical course suggested a challenge-rechallenge event of petitioner's symptoms becoming worse after additional injections of the vaccine, 3) medical articles hypothesized that the vaccine can cause the symptoms at issue, and 4) petitioner suffered some of the same symptoms that were listed in the vaccine's package insert as potential adverse reactions of the vaccine); *Cottingham,* 971 F.3d at 1346 (finding that petitioner's medical records showed at minimum circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine).

reasonable basis, despite the filing of an expert report.  *Id.* at 1377.  The expert report was "grounded in neither medical literature nor studies."  *Id.*  When the special master asked the expert to support his theory that a vaccine can aggravate a preexisting condition 14 days after the vaccine, the expert acknowledged that it was not supported in the literature and that ". . .it hasn't been studied."  *Id.*  Respondent contends that "[a]n expert report is clearly 'more than a mere scintilla' of evidence, and yet the Federal Circuit in *Perreira* agreed that petitioner's claim lacked a reasonable basis." (ECF No. 50, p. 14.)

In contrast, petitioner argues that:

Dr. Ehresmann's opinions may not carry the day on entitlement, and obviously the Court has questions to why there are not contemporaneous medical records pertaining to Petitioner's illness in addition to the espoused opinions of Dr. Ehresmann. But Respondent's half-hearted effort to weigh the evidence and attack the veracity of Dr. Ehresmann's opinions have no place in this analysis. Dr. Ehresmann's opinions are "objective evidence" supporting reasonable basis. In determining whether Petitioner meets the "scintilla" test, Dr. Ehresmann's opinions and the evidence offered more than surpasses the reasonable basis threshold.

(ECF No. 51, p. 3.)  Petitioner also stresses that the medical records are not wholly without reference to petitioner's alleged adverse reaction to her Tdap vaccine.  (ECF No. 53, p. 4 (citing Ex. 4, p. 33038 (July 17, 2017 immunization screening notation indicating prior reaction to tetanus vaccine); Ex. 4, p. 35218 (September 7, 2017 history of present illness reporting "feels reacted to tetanus vaccine"); Ex. 4, p. 39305 (February 21, 2018 notation associating tendonitis with prior tetanus vaccine)).

Importantly, petitioner has filed two relevant letters from Dr. Ehresmann—a February 3, 2016 letter to Gallant Medical Supply and a July 14, 2020 letter to Mr. Downing written for purposes of this claim.   In the Finding of Fact issued in this case, I found that Dr. Ehresmann's February 3, 2016 letter to Gallant Medical Supply constitutes contemporaneous documentation (albeit not in medical record form) corroborating petitioner's complaint of an exacerbation of symptoms subsequent to her Tdap vaccination.  (ECF No. 42, p. 24.)  The February 3rd letter, however, only evidences that petitioner suffered a subjective complaint of increased upper extremity pain beginning sometime prior to February 3, 2016.  (*Id.*)  Respondent is correct that there is no evidence Dr. Ehresmann diagnosed petitioner with reactive polyarthritis based on contemporaneous documents.  (The earliest of the notations cited by petitioner was recorded a year and a half later.)

Dr. Ehresmann's subsequent July 14, 2020 letter, identifies additional symptoms and purportedly confirms a diagnosis of reactive polyarthritis. (Ex. 8.)  However, in the Finding of Fact issued in this case, I found this later letter unreliable due to the many instances I highlighted where it included observations inconsistent with what Dr. Ehresmann had included in his medical records.  (ECF No. 42, pp. 15-21.)  I also

observed that Dr. Ehresmann had a history of writing letters on petitioner's behalf that demonstrated his letters to represent advocacy, which stands in contrast to more trustworthy contemporaneous medical treatment records. (For example, he opined as to the cause of gastroenteritis he had neither witnessed nor treated. (*Id*. at 18-19.)) Ultimately, I concluded that the July 14, 2020 letter could not be credited over the medical records.  (*Id*. at 21.)

In sum, I concluded in the Finding of Fact that there was preponderant evidence that petitioner suffered a subjective complaint of upper extremity symptoms subsequent to her Tdap vaccine.  However, I rejected Dr. Ehresmann's after-the-fact diagnostic opinion.  Nonetheless I indicated that petitioner could theoretically secure an expert opinion to support her claim. (ECF No. 42, p. 25.)  In the face of Dr. Ehresmann's ultimate failure as petitioner's treating physician to either document any diagnosis of reactive arthritis or to otherwise reliably support such a diagnosis, it may be challenging to demonstrate a reasonable basis for continuing this case further.  In that regard, I stressed that a minimum threshold for persuasiveness for any future expert report filed in this case is to ensure that the expert opinion distinguishes between the medical records and Dr. Ehresmann's letter to the court and to ensure that the opinion is based on facts that are preponderantly supported by the record. (*Id*. at 25.)  However, based on the above-cited notations in the medical records and the February 3, 2016 letter, petitioner's current counsel had a reasonable basis to file this petition, seek out the clarifying letter from Dr. Ehresmann, and litigate the claim up to the point of the finding of fact regarding diagnosis and onset.[3]

### III.   An Interim Award is Appropriate

Stressing the absence of any prevailing party requirement under the Vaccine Act, the Federal Circuit has held in *Avera* that interim awards for attorneys' fees and costs are appropriate under the Vaccine Act.  515 F.3d at 1352 (citing §300aa-15(e)(1)). Nonetheless, the Circuit denied an interim award in *Avera*, because the appellants had not suffered "undue hardship."  *Id*.  The Circuit noted that interim awards are "particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  *Id*.  Subsequently, in *Shaw v. Secretary of Health & Human Services*, the Federal Circuit reiterated its *Avera* standard, noting that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d 1372, 1375 (Fed. Cir. 2010); *see also Chinea v. Sec'y of Health & Human Servs.*, No. 15-95V, 2019 WL 3206829 at *2 (Fed. Cl. Spec. Mstr. June 11, 2019) (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017)) (observing three factors that have been considered when exercising discretion to award interim attorney's fees: (1) whether the fee request exceeds $30,000, (2) whether the expert costs exceed $15,000, and (3) whether the case has been pending for over 18 months.)

---

[3] I have reviewed the billing records and they include only minimal hours billed subsequent to the issuance of the finding of fact, primarily dedicated to communicating with petitioner.  I find these hours to be reasonable as attendant to counsel's obligation to address the content and significance of the finding of fact with petitioner.

Although noting that an award of interim attorneys' fees and costs is within the "reasonable discretion" of the special master, decisions of the Court of Federal Claims subsequently emphasized the Federal Circuit's "undue hardship" language and cautioned that the *Avera* decision did not create a presumption in favor of interim fees and costs in all cases. *See, e.g.*, *Shaw v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 420, 423 (2013). Nonetheless, it has also been noted that "the Federal Circuit in *Avera* and *Shaw* did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees." *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012).

In *Woods*, the Court observed that withdrawal of an attorney should be an important, if not deciding, factor in determining the appropriateness of an interim fee award. 105 Fed. Cl. at 154. Specifically,

> there is no reason to force counsel, who have ended their representation, to delay receiving fees indefinitely until the matter is ultimately resolved. The special master articulated a valid concern that it was 'unknowable' whether the case would be settled, or extensively litigated to the point of determining damages. The special master reasonably concluded that delaying a fee award to counsel who had ended their representation for an indeterminable time until the case was resolved sufficed to constitute the type of 'circumstances' to warrant an interim fee award.

*Id*. Following *Woods*, special masters have previously observed that "after withdrawing from a case, it may be difficult for former counsel to receive a fees award, and, in such circumstances, special masters have often found it reasonable to make such interim awards." *See, e.g.*, *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013).

In light of the above, I exercise my discretion to allow an award of interim fees and costs. This petition was filed over three and a half years ago. Additionally, the amount sought for fees exceeds the $30,000.00 figure cited in *Chinea,* though petitioner has not yet incurred any expert costs. Additionally, counsel is withdrawing and continued litigation is anticipated with petitioner proceeding either with new counsel or *pro se*. This leaves the ultimate time to resolution unknowable at this time and beyond counsel's control. For all the reasons stated above, I find that petitioner's petition was filed in good faith and with a reasonable basis. Therefore, I conclude that an award of interim fees and costs to petitioner's counsel is appropriate in this case.

### IV.     Amount of Reasonable Fees and Costs

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g. Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993). Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, special masters are entitled to

rely on their own experience and understanding of the issues raised.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).  However, petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award.  *Id*. at 484.  Notwithstanding that respondent has not raised any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique."  *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008); *see also McIntosh v. Sec'y of Health & Human Servs.*, 139 Fed Cl. 238, 250 (2018) (finding that the special master "abused his discretion by failing to independently review the petitioner's counsel's motion for attorneys' fees and reimbursement of case costs to determine if the requested fees and costs were reasonable.").  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that he might go beyond the particularized list of respondent's challenges."  *Duncan,* 2008 WL 4743493.

     Special Masters use the lodestar approach to determine what constitutes reasonable attorneys' fees under the Vaccine Act.  *Avera,* 515 F.3d at 1347.  The lodestar approach involves first determining "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* at 1347–48 *(*quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings.  *Id*.  For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.  No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has since updated the *McCulloch* rates to adjust for inflation and the Attorneys' Forum Hourly Rate Fee Schedules for successive years can be accessed online.[4]

     I have reviewed the billing records submitted by petitioner's counsel.  Petitioner requests the following hourly rates: for Mr. Downing, $385 per hour for work performed in 2018, 2019, 2020 and 2021, and $415 per hour for work performed in 2022; and for Ms. Courtney Van Cott $205 per hour for work performed in 2018 and 2019, $275 per hour for work performed in 2020 and 2021, and $325 per hour in for work performed in 2022.  (ECF No. 47-1.; ECF No. 52-1.)  These requested rates are reasonable and consistent with prior awards to Mr. Downing and Ms. Van Cott.  *See, e.g., Coons v. Sec'y of Health & Human Servs.,* No. 20-1067V, 2022 WL 2294213 (Fed. Cl. Spec. Mstr. May 19, 2022) (approving requested rates for Mr. Downing and Ms. Van Cott from 2020 through 2022); *Constantine v. Sec'y of Health & Human Servs.*, No. 18-1685V, 2022 WL 1862726 (Fed. Cl. Spec. Mstr. May 6, 2022) (approving requested rates for Mr. Downing and Ms. Van Cott from 2018 through 2021); *Hoover v. Sec'y of Health &*

---

[4] Each of the Fee Schedules for 2015 through 2022 can be accessed at http://www.cofc.uscourts.gov/node/2914.  The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323.  The schedules are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

*Human Servs.,* No. 20-1394V, 2021 WL 5575768 (Fed. Cl. Spec. Mstr. Nov. 1, 2021) (approving requested rates for Mr. Downing and Ms. Van Cott from 2020 to 2021); *Muller v. Sec'y of Health & Human Servs.,* No. 18-1258V, 2021 WL 850866 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) (approving rates for Mr. Downing and Ms. Van Cott from 2018 through 2020); *Raymer v. Sec'y of Health & Hum. Servs.,* No. 18-794V, 2020 WL 6747470 (Fed. Cl. Spec. Mstr. Oct. 22, 2020) (approving rates for Mr. Downing and Ms. Van Cott from 2017 through 2020); *Tucker v. Sec'y of Health & Human Servs.,* No. 19-13V, 2020 WL 6777559 (Fed. Cl. Spec. Mstr. Oct. 30, 2020) (same).

Petitioner also requests an award for work performed by paralegals at a rate of $135 for 2018 through 2022. (ECF No. 47-1.) These requested rates are also consistent with what has been previously awarded to petitioner's counsel in prior cases. *See, e.g., Coons,* 2022 WL 2294213 (approving the requested rates for 2020-2022); *Hoover,* 2021 WL 5575768 (approving the requested rates for 2020 and 2021); *Schultz v. Sec'y of Health & Human Servs.,* No. 16-539V, 2020 WL 1987784, at *2 (Fed. Cl. Spec. Mstr. Mar. 25, 2020) (approving rates for 2018-2020).

Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees. *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375. The majority of the costs incurred in this case are attributed to petitioner's filing fee, postage, printing, and medical records requests. (ECF No. 47-1, p. 37; ECF No. 52-1, p. 2.) All of these requested costs are reasonable and supported by the appropriate documentation. (ECF No. 47, pp. 37-47; ECF No. 52-1, p. 2.) Accordingly, I award petitioner miscellaneous costs in the amount of $600.96.

## V.     Conclusion

Accordingly, petitioner's application for interim attorneys' fees and costs is **GRANTED** and petitioner is awarded **a lump sum in the amount of $75,406.96, representing reimbursement for interim attorneys' fees and costs, in the form of a check made payable to petitioner and her counsel, Andrew Donald Downing, Esq.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED.**

> **s/Daniel T. Horner**
> Daniel T. Horner
> Special Master

---

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).